UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
1:20-CV-470



FILED
APR 22 2021
IN THIS OFFICE
Clerk U.S. District Court
Greensboro
By_____

LUCIA BINOTTI, individually and on
behalf of all others similarly situated,

Plaintiff.

v.

DUKE UNIVERSITY,

Defendant.

**NOTICE TO THE CLASS OF
PROPOSED CLASS ACTION
SETTLEMENT**

This matter comes before the Court pursuant to the unopposed motion to direct

notice to the class of proposed class action settlement. The plaintiff, Dr. Lucia Binotti,

and the defendant, Duke University, have agreed to a Settlement Agreement ("the

Settlement" or "Settlement Agreement") resolving this action.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Dr. Binotti asks the

Court to: (1) find that it is likely to certify the Settlement Class upon final approval; (2)

find that it will likely approve the Settlement; (3) approve the proposed plan of Notice

and direct notice to the Settlement Class; (4) appoint counsel for the Settlement Class; (5)

appoint a Notice Administrator; (6) set a schedule for disseminating Notice to Class

members, as well as deadlines to comment on, object to, or opt out of the Class; and (7)

schedule a final fairness hearing.

The Court has considered the motion, all other papers filed concerning that

motion, and all other pertinent documents and pleadings filed in this action, as well as

counsel's answers to the Court's questions during a hearing on April 15, 2021. *See*

1

Minute Entry 4/15/2021. Based on the evidence here, its familiarity with a related class action, and its experience managing class actions, and in its discretion, the Court hereby **FINDS**, for purposes of this order only and subject to reconsideration after notice to the Class, **AND ORDERS:**

1.     Dr. Binotti's unopposed motion to direct Notice to the Class of proposed class action Settlement is **GRANTED**.

2.     Unless otherwise defined, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

3.     At this initial stage of settlement review, this Court should determine whether notice of the proposal to the Class "is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## FACTORS FOR CLASS CERTIFICATION

4.     The proposed Class is defined as:

> All natural persons employed by Duke University or the University of North Carolina, Chapel Hill from October 1, 2001 through February 5, 2018 as a faculty member. Excluded from the Class are: members of the boards of directors and boards of trustees, boards of governors, senior administrators of Duke and UNC, and faculty with academic appointments with the School of Medicine; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

Doc. 41-1 at ¶ I(A)(3).

5.     When a settlement is reached before Rule 23 certification, a class may be certified solely for the purposes of settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S.

2

591, 620 (1997); *see also Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 2:10-CV-10-F, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011); *see* Fed. R. Civ. P. 23(e)(1)(B)(ii).

6. The parties seeking class certification must meet the four prerequisites of Federal Rule of Civil Procedure 23(a)(1) through (4): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). The Court finds that it will likely be able to certify the Settlement Class.

a. First, the Settlement Class—which has over 6,000 members—is so numerous that joinder of all members is impracticable. *See* Doc. 51 at ¶ 4(a).

b. Second, commonality is satisfied because the common question of whether Duke and UNC entered into an unlawful agreement is "dispositive and over-shadow[s] other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Specifically, the following major factual and legal issues are common to the Settlement Class: whether Duke and UNC entered into a no-poach agreement restraining recruitment and hiring, the agreement's scope and duration, and its effect on compensation.

c. Third, Dr. Binotti—who has worked as a non-medical faculty member at UNC since 1990, Doc. 1 at p. 5 ¶ 9, and allegedly was paid less during the Class Period as a result of the alleged agreement—has claims that are typical of the Settlement Class. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."). Dr. Binotti shares with the Settlement Class

3

Members the same alleged injuries arising from the same alleged conduct: suppression of their compensation due to the alleged no-poach agreement.

        d.      Lastly, Dr. Binotti adequately represents the class. "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Windsor*, 521 U.S. at 625. The Court has carefully evaluated whether Dr. Binotti adequately represents the Class, as intraclass conflicts may arise where, as here, some of the Class claims are potentially time-barred, if the settlement value of one set of claims (e.g., "timely" or "time-barred") is substantially higher than the other. *See In re Cmty. Bank of N. Va. Morg. Lending Practices Litig.*, 795 F.3d 380, 389 (3d Cir. 2015); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981). However, a conflict will only defeat the adequacy requirement if it is fundamental. *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019). A conflict is not fundamental if all class members: (1) "share common objectives and the same factual and legal positions," and (2) have the same interest in proving the defendant's liability. *Id.* (citation omitted). Here, Dr. Binotti and the Class have the same interest in proving that Duke's conduct violated antitrust laws and suppressed compensation and mobility as a result. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272–73 (3d Cir. 2009) (rejecting a time-period conflict argument because the class members "shared a unified interest" in establishing liability). There is nothing to indicate that any unnamed Class Members would assert a different legal or factual position to prove Duke's liability or to measure the damages resulting from the alleged conspiracy. *See Sharp Farms*, 917 F.3d at 295 (holding a fundamental conflict existed where, because of divergent legal theories,

4

the settlement "would provide broader relief to [part of] the settlement class at the expense of [other] class members . . . ."). Approximately 95% of Class Members have claims in both periods, Doc. 51 at ¶ 4, and, like Dr. Binotti, have an interest in maximizing damages for both periods. Moreover, the adequacy of the settlement does not rest only on the value of one set of claims; each set of claims had strengths and weaknesses and after careful investigation and consideration, Dr. Binotti and her counsel concluded that that there was no basis to value the claims of one period differently than the other. Doc. 49-1 at ¶¶ 5–6. There appears to be a reasonable and rational basis to distribute the settlement funds evenly throughout the Class Period, *see* discussion *infra* at pp. 11–12 ¶ 10(d), as proposed in the Settlement Agreement. *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) ("The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis.") (citation omitted); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d at 220 (listing circumstances in which an "even spread" across two time periods may be appropriate). In light of the percentage of Class Members with claims in both periods and the similar valuation of the claims, any intraclass conflict arising from the fact that the Class Period covers "timely" and "time-barred" claims is minimal and is not a fundamental conflict sufficient to defeat the adequacy requirement at this stage.

7.      Class certification is therefore appropriate if the predominance and superiority requirements of Rule 23(b)(3) are satisfied. Fed. R. Civ. P. 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any

questions affecting only individual members . . . ." *Id.* Second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* In settlement-only certification cases, "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Windsor*, 521 U.S. 591 at 620.

      a.     Here, predominance is met because there are significant legal and factual questions pertinent to the underlying cause of action that can be answered with common proof and without individual inquiries, including whether (1) Duke entered an agreement violating antitrust laws; (2) whether the agreement injured Plaintiff and the Class; and (3) whether damages can be measured through a common method. *See In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 344 (D. Md. 2012). The same is true for impact and damages. Proof of injury is not individualized, but rather, depends on a common theory that pay structures at Duke and UNC were systematically suppressed, thus affecting all class members.

      b.     Superiority is also satisfied. Class treatment of the legal issues identified in this case would be superior to other procedures for the handling of the claims. No other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending. Furthermore, this Court has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum.

6

8.     Based on these findings and reasons, the Court concludes, pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), that it will likely be able to certify Settlement Class under Rule 23(b)(3) for purposes of judgment on the proposal.

9.     Dr. Binotti and her counsel are tentatively appointed as Settlement Class Representative and Settlement Class Counsel.

a.     Appointment of Dr. Binotti as Settlement Class Representative is appropriate because she is a member of the Settlement Class, she has adequately represented the interests of the Settlement Class in the past, and there is nothing to indicate that she will be unable to represent those interests in the future.

b.     Appointment of Lieff, Cabraser, Heimann & Bernstein, LLP (LCHB) and Elliot Morgan and Parsonage, P.A. (EMP) as Settlement Class Counsel is appropriate.  In evaluating the appointment of class counsel, courts must consider:  (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

i.     Counsel's work in identifying and investigating the claims at issue in this action dates back many years. *See* Doc. 49-1 at ¶ 8; Doc. 41 at ¶ 13.  LCHB and EMP successfully negotiated a settlement for the medical faculty at UNC and Duke in *Seaman v. Duke University*, No. 1:15-cv-00462 (M.D.N.C.), an action arising out of the same alleged no-poach agreement.  Doc. 41 at ¶ 13; Doc. 49-1 at ¶¶ 6, 8.  Through discovery in that litigation, counsel obtained documentary evidence and elicited witness

7

testimony revealing the alleged agreement stretched beyond the medical schools. Doc. 41 at ¶ 13.

       ii.     Second, LCHB and EMP have significant experience handling class actions, including antitrust and employment class actions. Doc. 44 at ¶¶ 3–12; Doc. 43 at ¶¶ 3–7.

       iii.    Third and relatedly, LCHB and EMP have demonstrated their knowledge of the applicable law by successfully negotiating the Settlement here and *Seaman* settlement, and defeating part of Duke's motion for judgment on the pleadings, despite the unsettled case law underlying some of its theories for proving liability. Doc. 33 at 3–4. Thereafter, counsel renewed settlement discussions with Duke, capitalizing on the fact that the Court's order highlighted the risks of litigation for both sides. Doc. 49-1 at ¶¶ 11–13.

       iv.    Fourth, LCHB and EMP have devoted ample resources to litigating this action and to negotiating the Settlement. *Id.* at ¶¶ 9–13; Doc. 43 at ¶¶ 8–9; Doc. 44 at ¶¶ 13–14.

## FACTORS FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

10.    The Court makes the following **FINDINGS** under Federal Rule of Civil Procedure 23:

       a.     "It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (noting the "strong judicial policy in favor of

8

settlements, particularly in the class action context.") (citation omitted); 5 William H.
Rubenstein, *Newberg on Class Actions* § 13.44 (5th ed. Dec. 2020 update) (collecting
cases).

    b.  A class settlement may be approved if it is "fair, reasonable, and
adequate." Fed. R. Civ. P. 23(e)(2); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th
Cir. 1991). "In applying this standard, the Fourth Circuit has bifurcated the analysis into
consideration of fairness, which focuses on whether the proposed settlement was
negotiated at arm's length, and adequacy, which focuses on whether the consideration
provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-
CV-00400-BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *Jiffy Lube*,
927 F.2d at 158–59). A four-factor test is applied to determine the fairness of a proposed
settlement: "(1) the posture of the case at the time settlement was proposed; (2) the
extent of discovery that had been conducted; (3) the circumstances surrounding the
negotiations; and (4) the experience of counsel in the area of [the] class action litigation."
*In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. &
Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) (citing *Jiffy Lube*, 927 F.2d at 158–
59). When a settlement is negotiated before class certification, the settlement is subject
to a higher degree of scrutiny in assessing its fairness. *See, e.g., Roes, 1–2 v. SFBSC
Mgmt., LLC*, 944 F.3d 1035, 1048-49 (9th Cir. 2019) ("Where the parties negotiate
a settlement agreement before the class has been certified, settlement approval requires a
higher standard of fairness and a more probing inquiry than may normally be required

9

under Rule 23(e).") (cleaned up); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

        c.     All four fairness factors favor approval here. The Settlement was reached after adversarial litigation, including the adjudication of Duke's motion for judgment on the pleadings; the retention of an expert by Dr. Binotti to measure impact and damages; hours of negotiations via telephone between December 6, 2019, and December 16, 2020; and a seven-hour mediation. Doc. 49-1 at ¶¶ 9–13. The progress made in this case, and in the earlier related case focusing on medical faculty, set the stage for these settlement negotiations. Counsel for both sides had sufficient information to evaluate the costs and benefits of settlement at this juncture. The parties' negotiations were adversarial, arm's-length, and occurred through many discussions. The negotiations were facilitated through a neutral third-party mediator, Jonathan Harkavy. Finally, counsel for Dr. Binotti have extensive experience in antitrust and class action litigation, and their informed opinion is entitled to some weight.

        d.     The Court assesses the adequacy of the Settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits; (2) any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Beaulieu*, No. 5:06-CV-00400-BR, 2009 WL 2208131, at *26 (citing *Jiffy Lube*, 927 F.2d at 158–59).

10

i.       With respect to the first and second factors, Dr. Binotti has adequately explained the strengths and risks associated with continued litigation of her claims and trial. Dr. Binotti presented some evidence that could support a finding of liability. But the Court's decision that claims for damages before 2016 are barred by the statute of limitations, Doc. 33 at 2, 4–5, coupled with the allegation in the complaint that the no-poach understanding ended in February 2018, limited the period for which Class Members could recover if the case went forward. Additionally, for claims for damages after 2016, the Class would face the challenge of persuading a jury that Duke and UNC continued their alleged no-poach understanding after Dr. Seaman filed her complaint on June 9, 2015, through February 5, 2018, the effective date of the *Seaman* settlement. Doc. 49-1 at ¶ 6. While Dr. Binotti could have sought reconsideration or an appeal of the decision, there is no guarantee she would have prevailed, and the litigation would have been prolonged. Hence, without a reversal of the Court's order, claims for damages before 2016 would have been lost, and claims for damages after 2016 would have been difficult to obtain. Finally, it is almost certain that Duke would have sought summary judgment or filed other motions for the Court to adjudicate, which could have been dispositive. In light of these risks, the $19 million monetary recovery, averaging out to approximately $2,260[1] per class member, is a strong result for the class. The proposed

---

[1] The Plan of Allocation provides a recovery to the Class, net of administrative costs, attorneys' fees and other expenses, on a pro rata basis according to each Class Member's claim of damages. Doc. 41-1 at 50–51. Each Class Member will receive a share of the net proceeds of the Settlement Fund using a formula that accounts for the fact that those employees who had higher salaries or worked for a greater number of years were allegedly harmed more. *See id.* at pp. 41–42 ¶ 9. The Court calculated the average amount as follows: The gross settlement fund

11

allocation plan is fair and reasonable as it will compensate Class Members on a pro rata basis according to the degree of alleged harm they suffered.

ii.     With respect to the third factor, the Court had just ruled on Duke's motion for judgment on the pleadings. Motions concerning discovery, class certification, summary judgment, and trial would involve considerable time and expense of the parties and the Court. Continued litigation would have also risked the chance of no recovery for the Class. The proposed Settlement guarantees Class Members significant monetary relief soon.

iii.     The fourth factor is irrelevant because there is no indication that Duke would be unable to satisfy a judgment.

iv.     The fifth factor, the degree of opposition to the Settlement, can only be known after the Court grants preliminary approval and directs notice to the Class.

## Notice to Class Members

11.     The proposed Notice clearly explains the rights of Class Members, including the nature of the action, the Class definition, the legal issues, Class members' right to make an appearance with an attorney, Class Members' right to request exclusion,

---

is $19,000,000. *See id.* at p. 6 ¶ I(A)(28). From this amount are subtracted the amounts requested, estimated, or expected for attorneys' fees ($4,750,000), case costs ($110,000), service award for Dr. Binotti ($65,000), notice and settlement administrative costs ($100,000), and reserve fund for dispute resolution ($100,000). *See id.* at p. 41 ¶ 9 (listing the fees to be deducted); p. 15 ¶ 4 (listing anticipated notice costs); p. 19 at ¶ 6 (listing amount of dispute fund); p. 45 ¶ 18 (listing anticipated attorneys' fees, case costs, and service award). This leaves a net settlement fund for distribution to the Class of $13,875,000. The net fund divided among the approximately 6,140 class members provides for an average settlement amount of $2,259.77.

Class Members' right to object to the Settlement, and the binding effect of a Class judgment. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). The Notice will be both mailed and e-mailed to all Class Members. Doc. 41-1 at p. 8 ¶ II(B)(4). Notice will also be given through a case-specific website, in local newspapers, and on social media. Doc. 41 at ¶ 10. The Court finds that this plan reflects "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

12.     The Notice also includes material information about Class Counsel's intent to request fees up to 25% of the settlement amount, costs, and a $65,000 service award for Dr. Binotti. Doc. 41-1 at p. 45 ¶ 18. The Court reserves final judgment on the contemplated requests until the Class has been notified and a full record has been developed and subject, of course, to final approval of the settlement. The requests are within a range routinely approved by courts.

### Administration of the Settlement Fund

13.     The Court hereby appoints the Notice Administrator proposed by Dr. Binotti, Rust Consulting, which is the entity that will provide Notice to the Class and administer the Settlement Fund as set forth in the Settlement Agreement and by order of the Court. Consistent with the Settlement Agreement, the responsibilities of the Notice Administrator will include: (a) disseminating the notice to the Class; (b) maintaining a website to enable Class Members to access relevant documents; (c) handling withholding, reporting, payment, dissemination of forms, and other aspects of Settlement administration relating to all applicable taxes as set forth in the Settlement Agreement;

13

(d) distributing Settlement checks to Class Members; and (e) collecting and confirming the validity of any requests for exclusion from the Class. Pursuant to the Settlement Agreement, the cost of the Notice Administrator's services, and all other reasonable costs of Settlement administration shall be paid out of the Settlement Fund, subject to Court review and approval.

14. The Court approves Citibank, N.A. as the Escrow Agent pursuant to the Settlement Agreement.

15. All funds held by the Escrow Agent shall be deemed and considered to be *custodia legis* and shall remain subject to the jurisdiction of the Court until funds shall be distributed (or returned to Duke) pursuant to the Settlement Agreement and further order(s) of the Court.

16. The Settlement Fund, to be held at the Escrow Agent, shall be established as a fiduciary account and administered in accordance with the provisions of the Settlement Agreement. The Court approves the establishment of the escrow account under the Settlement Agreement as a qualified settlement fund (QSF) pursuant to Internal Revenue Code Section 1.468B-1 and the Treasury Regulations promulgated thereunder, and retains continuing jurisdiction as to any issue that may arise in connection with the formation and/or administration of this QSF.

17. To facilitate the Notice and settlement distribution process, should the Court grant final approval, Duke and the University of North Carolina at Chapel Hill **SHALL** provide to the Notice Administrator, in an electronic database format, from the information in their human resources databases, for the Class Period, the full legal names,

14

all known email addresses, and last known physical address for each Class Member, no later than twenty-eight (28) days after the date of this order. Doc. 41-1 at p. 8 ¶ 5; *see* Doc. 52 at ¶¶ 2–3 (joint motion from the parties and non-party UNC acknowledging that UNC will be able and obligated to produce such information, and requesting that the Court issue an order authorizing UNC to disclose the information pursuant to the standing protective order at Doc. 34). Then, Duke and UNC **SHALL** supplement that data with the social security numbers and total compensation received for each Class Member during the Class Period, no later than ninety (90) days after the date of this order.

18.     No later than twenty-one (21) days after receiving the information in the first sentence of paragraph 17 of this order, the Notice Administrator shall cause the Notice of the Settlement to be mailed by first-class mail, postage prepaid, and/or emailed to Class Members pursuant to procedures described in the Settlement, and to any potential Class Member who requests one; and, in conjunction with Class Counsel, shall cause a case-specific website to become operational (or to update the existing case-specific website) with case information, court documents relating to the Settlement, and the Notice. At least thirty (30) days before the Final Approval Hearing, the Notice Administrator shall file with the Court an affidavit of compliance with the Notice requirements.

**Responses by Class Members and the Scheduling of a Final Approval Hearing**

19.     Class Members shall have until thirty (30) days from the date the Notice period begins (established by the first date upon which the Notice Administrator provides

15

mail and e-mail Notice to Class Members ("Notice Date")) to opt-out of the proposed

settlement (the "Opt-Out Deadline"). Any Class Member who wishes to be excluded

(opt-out) from the Settlement Class must send a written Request for Exclusion to the

Notice Administrator at one of the addresses provided by the Notice Administrator in the

Notice via First Class United States Mail. The letter must be postmarked on or before the

close of the Opt-Out Deadline. Doc. 41-1 at pp. 9–10 ¶ II(E)(1). To be effective, such

requests for exclusion must state the Class Member's full legal name and address, the

approximate dates of their employment with Duke and/or UNC, include a statement that

the Class Member wants to be excluded from the Settlement; and be signed and dated by

the Class Member or their legal representative. *Id.* Class Members who exclude

themselves from the Settlement Class will not be eligible to receive benefits under the

Settlement, will not be bound by any further orders or judgments entered for or against

the Settlement Class, and will preserve their ability to independently pursue any claims

they may have against Duke. Class Members provided with a right to opt-out pursuant to

this order who do not properly and timely request exclusion from the Settlement Class

shall, upon entry of the Final Approval Order and Judgment, be bound by all the terms

and provisions of the Settlement Agreement, including the Release provisions, whether or

not such Class Member objected to the Settlement.

20.    A final hearing on the Settlement Agreement ("Final Approval Hearing")

shall be held before the Court at 10:00 a.m. on Thursday, August 5, 2021, in Courtroom

No. 3, United States District Court, 324 W. Market Street, Greensboro, NC 27401. The

hearing is at least 100 days from the date of the motion for preliminary approval to allow

Duke sufficient time to complete its obligations under the Class Action Fairness Act and is at least 70 days from the Notice Date to allow sufficient time for the steps that take place after the issuance of Notice. If the public health situation arising from the COVID-19 pandemic requires, the Court may conduct the hearing via video conference technology, with appropriate mechanisms in place for public observation.

21.     At the Final Approval Hearing, the Court will consider: (a) the fairness, reasonableness, and adequacy of the Settlement Agreement and whether the Settlement Agreement should be granted final approval by the Court; (b) approval of the proposed Plan of Allocation; and (c) entry of a Final Approval Order and Judgment including the Settlement Release. Class Counsel's application for payment of attorneys' fees and costs, and request for the Court to approve a service award to the Named Plaintiff, shall also be heard at the time of the hearing. Class Counsel shall file their motion for payment of attorneys' fees and costs and for a service award to Dr. Binotti no later than fourteen (14) days from the Notice Date.

22.     The date and time of the Final Approval Hearing shall be subject to adjournment by the Court without further notice to the Class Members, other than that which may be posted by the Court or posted on the website maintained by the Administrator. Should the Court adjourn the date for the Final Approval Hearing, such adjournment shall not alter the deadlines for mailing of the Notice, nor the deadlines for submission of settlement objections, requests for exclusion, or notices of intention to appear at the Final Approval Hearing unless those dates are explicitly changed by subsequent order.

23. Any Class Member provided with a right to opt-out pursuant to this order who properly and timely elects to be excluded from the Class may, but need not, enter an appearance through their own attorney. For Settlement purposes, Class Counsel will continue to represent Class Members who do not timely object and do not have an attorney enter an appearance on their behalf.

24. Any Class Member provided with a right to opt-out pursuant to this order who properly and timely elects to be excluded from the Class may, but need not, submit comments or objections to (a) the Settlement Agreement, (b) the entry of a Final Approval Order and Judgment approving the Settlement Agreement, (c) Class Counsel's application for payment of attorneys' fees and costs, and/or (d) service award request for the Named Plaintiff, by mailing a written comment or objection to the addresses provided by the Notice Administrator in the Notice.

25. Any Class Member making an objection (an "Objector") must sign the objection personally, even if represented by counsel, and provide the Class Member's name and full residence or business address and a statement signed under penalty of perjury that the Class Member was an employee and member of the Settlement Class. An objection must state why the Objector objects to the Settlement Agreement and provide a basis in support, together with any documents such person wishes to be considered in support of the objection. If an Objector intends to appear at the hearing, personally or through counsel, the Objector must include with the objection a statement of the Objector's intent to appear at the hearing. The objection must also contain a detailed list

18

of any other objections by the Objector, as well as by the Objector's attorney, to any class action settlements submitted to any court in the United States in the past five years.

26. Objections, along with any statements of intent to appear, must be postmarked no later than thirty (30) days from the Notice date, and mailed to the addresses provided by the Notice Administrator in the Notice. If counsel is appearing on behalf of more than one Class Member, counsel must identify each such Class Member and each such Class Member must have complied with this order.

27. Only Class Members who have submitted valid and timely objections accompanied by notices of intent to appear shall be entitled to be heard at the Final Approval Hearing. Any Class Member who does not timely file an objection in writing in accordance with the procedure set forth in the Notice and mandated in this order shall be deemed to have waived any objections to (a) the Settlement Agreement, (b) the entry of a Final Approval Order and Judgment approving the Settlement Agreement, (c) Class Counsel's application for payment of attorneys' fees and costs, and/or (d) service award request for the Named Plaintiff.

28. Class Members need not appear at the hearing or take any other action to indicate their approval.

29. Upon Entry of the Final Approval Order, any Class Member provided with a right to opt-out pursuant to this order that has not properly and timely requested to be excluded from the Class will be enjoined from proceeding against the Duke and all other Released Parties with respect to all of the Released Claims, consistent with the Settlement Agreement.

19

30.    The events referenced above shall occur as follows:

| Event | Date |
|-------|------|
| Duke and UNC to Submit Class Member Names, Emails, and Addresses to Notice Administrator | Within 28 days of this order |
| Notice Administrator will Mail and Email notices, and Maintain Website | Within 21 days of receiving Class Member Names, Emails, and Addresses |
| Duke and UNC to Supplement Class Member Data with Social Security Numbers and Total Class Compensation | Within 90 days of this order |
| Class Counsel Motion for Attorneys' Fees, Costs, and Dr. Binotti's Service Award | Within 14 days from Notice Date |
| Opt-Out and Objection Deadline | 30 days from Notice Date |
| Notice Administrator Affidavit of Compliance with Notice Requirements | To be filed 30 days before the Final Approval Hearing |
| Motion for Final Approval | To be filed at least 21 days before the Final Approval Hearing |
| Replies in Support of Motions for Final Approval, Attorneys' Fees and Costs, and Dr. Binotti's Service Award | To be filed 7 days before Final Approval Hearing |
| Final Approval Hearing | Thursday, August 5, 2021 |

31.    All further proceedings as to Duke are hereby stayed, except for any actions

required to effectuate or enforce the Settlement Agreement, or matters related to the

20

Settlement Fund, including application for attorneys' fees, payment of costs, and service award to the Named Plaintiff.

32.     If the Settlement Agreement is terminated pursuant to applicable provisions in the Settlement Agreement, the Settlement Agreement and all related proceedings shall, except as expressly provided in the Settlement Agreement, become void and shall have no further force or effect, the Class shall retain all of their current rights against Duke, and Duke shall retain any and all of its current defenses and arguments thereto so that Duke may take such litigation steps that Duke otherwise would have been able to take absent the pendency of this Settlement. This Action shall thereupon revert forthwith to its procedural and substantive status as of December 16, 2020, and it shall proceed as if the Settlement Agreement had not been executed.

33.     Neither this order nor the Settlement Agreement, nor any other Settlement-related document nor anything contained or contemplated therein, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement, this order, or in any other Settlement-related document, shall constitute, be construed as or deemed to be evidence of or an admission or concession by Duke as to the validity of any claim that has been or could have been asserted against Duke or as to any liability of Duke as to any matter encompassed by the Settlement Agreement.

**SO ORDERED**, this the 22nd day of April, 2021.

UNITED STATES DISTRICT JUDGE