UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

DURHAM DIVISION

| | |
|---|---|
| LUCIA BINOTTI, individually and on behalf of all others similarly situated,<br><br>Plaintiff.<br><br>v.<br><br>DUKE UNIVERSITY,<br><br>Defendant. | Case No. 1:20-cv-00470<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARD** |

This matter comes before the Court on Plaintiff Dr. Lucia Binotti's motion seeking (1) 25% of the $19 million common fund created by the Settlement with Duke University ("Duke") as attorney's fees; (2) reimbursement to Class Counsel of $125,201.41 in costs; and (3) a service award of $65,000 for Dr. Binotti. Duke takes no position on this request. The Court has reviewed the request and supporting evidence, all other papers filed in relation to that request and the arguments of counsel, as well as attorney's fees and class representative service awards from similar cases. For the reasons stated herein, the Court **GRANTS** the motion.

## I. BACKGROUND

The *Binotti* case built upon the work performed in *Seaman v. Duke University*, No. 1:15-cv-00462-CCE-JLW (M.D.N.C.), challenged the same conduct alleged in *Seaman*, and achieved a similarly favorable result as *Seaman* for a separate class of non-medical faculty.

1

2273456.2

1. *Seaman*

Dr. Seaman filed her complaint against Duke and UNC on June 9, 2015. *Seaman v. Duke Univ.*, No. 1:15-cv-00462-CCE-JLW (M.D.N.C.), Dkt. 1. She alleged that Defendants agreed to eliminate competition for each other's medical faculty in violation of Federal and State antitrust laws. *Id.* In 2017, UNC settled the allegations against it by entering into a consent decree prohibiting UNC from further enforcing the no-poach agreement or entering into anything like it in the future. *Id.*, Dkt. 83-1 at 59. This injunctive relief Dr. Seaman secured benefited the classes of both *Seaman* and *Binotti*, since it was University-wide. *Id.* The UNC settlement also contained discovery cooperation, including requiring document production from many senior administrators outside of the UNC medical school. *Id.* at 65.

Then in 2019, after nearly four years of hard-fought litigation, Plaintiff Dr. Seaman entered into a proposed settlement with Duke to resolve the medical faculty class claims. Duke agreed to pay $54.5 million and agreed to significant injunctive relief that provides powerful protections to the all faculty going forward. *Seaman,* No. 1:15-cv-00462-CCE-JLW (M.D.N.C.), Dkt. 361 at 7, 42, 47. The *Seaman* settlement also set forth an important and unprecedented role for the United States Department of Justice to monitor and enforce compliance with the settlement's injunctive relief provisions. *Id.* at 24, 47, 59. Just as with the UNC settlement, the injunctive relief provisions were University-wide, and thus benefited the classes at issue in both *Seaman* and *Binotti*.

When *Seaman* was first filed, Dr. Seaman was only aware of the alleged no-poach

agreement between the Duke and UNC medical schools. As a result of the extensive discovery efforts undertaken in *Seaman*, Class Counsel discovered that the alleged conspiracy was part of a much larger alleged University-wide effort to eliminate competition for all faculty of the two institutions. While *Seaman* resolved the damages claims of medical faculty and provided injunctive relief to the benefit of all faculty, the damages claims of non-medical faculty remained unaddressed.

### 2. *Binotti*

To seek damages for non-medical faculty, Dr. Binotti filed her complaint against Duke on May 27, 2020. Dkt. 1. No other plaintiffs, and no other counsel, stepped forward to take on the challenge of pursing damages claims for the remaining faculty. She alleged a University-wide understanding between Duke and UNC to suppress competition for each other's faculty (the "No-Poach Understanding"). *Id*. Before filing that complaint, Dr. Binotti and Class Counsel made extensive efforts with Duke over five months to reach a settlement, in negotiations facilitated by mediator Jonathan Harkavy, the same mediator who facilitated the Duke settlement in *Seaman*. Those pre-filing negotiations were ultimately unsuccessful.

On July 27, 2020, Duke answered the complaint and filed a Motion for Judgment on the Pleadings, arguing that (1) Dr. Binotti's claims are barred by the statute of limitations, and (2) Dr. Binotti failed to make factual allegations sufficient to toll the statute of limitations based on fraudulent concealment. Dkts. 16, 17. On November 9, 2020, the Court denied the motion regarding the statute of limitations. Dkt. 33. The

3

2273456.2

Case 1:20-cv-00470-CCE-JLW   Document 59-2   Filed 07/12/21   Page 3 of 15

Court held it was plausible that the alleged multi-decade conspiracy continued beyond 2011 and that Duke continued to commit overt acts within the statute of limitations. *Id.* The Court, however, limited damages claims to those sustained after 2016, concluding that Dr. Binotti had not plausibly alleged an active act of concealment, the first prong of the fraudulent concealment test. *Id.*

The parties then made a renewed effort to resolve the matter, involving extensive negotiations that culminated in an arm's length, full-day mediation held on December 16, 2020. That mediation resulted in a settlement agreement, which the Court preliminarily approved on April 22, 2021 (Dkt. 55), as amended on June 14, 2021 (Dkt. 58).

## II. ANALYSIS

### A. Fees

In a class action, the court may award reasonable attorney's fees and nontaxable costs as authorized by law or by agreement. Fed. R. Civ. P. 23(h). In a common-fund case such as this, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). District courts in the Fourth Circuit "overwhelmingly" prefer the percentage method in common-fund cases, *Phillips v. Triad Guaranty Inc.*, No. 1:09CV71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016), and "the vast majority of courts of appeals now permit or direct district courts to use" this method. *Manual for Complex Litigation* § 14.121 (4th ed. 2011); *id.* at nn. 483-85 (listing cases by circuit).

To determine the reasonableness of the fee award, the Court begins by considering

the twelve factors identified in *Barber v. Kimbrell's, Inc.*: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases." 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989)).

Additionally, the Court may, but is not required, to "conduct a lodestar cross-check that compares the requested contingent fee award against a fee calculated based on hours spent at prevailing market rates." *Sims v. BB&T Corp.*, Nos. 1:15-CV-732, 1:15-CV-841, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) (citing *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 462 (D. Md. 2014)). When using lodestar method as a "cross-check," the Court needs not apply the "exhaustive scrutiny" typically mandated, and the Court may accept the hours estimates provided by counsel. *Jones v. Dominion Res. Servs., Inc.*, 601 F.Supp.2d 756, 765–766 (S.D. W.Va. 2009).

5

2273456.2

Case 1:20-cv-00470-CCE-JLW   Document 59-2   Filed 07/12/21   Page 5 of 15

1. *Barber* **Factors**

Class Counsel request attorney's fees of 25% of the common fund, or $4,750,000. The request is reasonable and lower than the common figure of one-third in this circuit in cases of similar complexity. *See Phillips*, 2016 WL 2636289, at *6; *Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-333, 2018 WL 6305785, at *2 (M.D.N.C. Dec. 3, 2018) (one-third of fund granted); *Sims*, 2019 WL 1993519, at *2 (same).

There is more than sufficient reason to support a 25% contingent fee. The Court begins with the excellent result obtained by Class Counsel: a $19 million cash settlement, an average net recovery of approximately $2,341.19 per regular rank faculty class member. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010) (the result obtained is "the most critical factor in determining the reasonableness of a fee award" (citation omitted)). By comparison to other antitrust employment cases, it one of the best recoveries achieved, particularly in light of the challenges in the case and that it resolved at an early stage in the litigation. Further, while an award of one-third is common in antitrust class actions, Class Counsel here only seek an award of 25% of the fund. *See*, *e.g.*, *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318(RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (one-third of $163.5 million settlement); *In re: Urethane Antitrust Litig.*, MDL No. 1616, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (one-third of $835 million settlement); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 (S.D. Fla. 2011) (one-third of $510 million settlement); *In re Vitamins Antitrust Litig.*, No. MISC. 99-197(TFH), 2001 WL 34312839, at *9 (D.D.C.

July 16, 2001) (over one-third of $365 million settlement); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819-CW, (N.D. Cal. Oct. 14, 2011), Dkt. 1407 (one-third of $77 million settlement).

The excellent result is also attributable to Class Counsel's specialized experience and expertise in employment, antitrust, and class action cases. Class Counsel are particularly skilled in such hybrid cases, having brought and successfully resolved the first case of its kind, *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-2509-LHK (N.D. Cal.), and the case that proceeded this one, *Seaman v. Duke University*, No. 1:15-cv-00462-CCE-JLW (M.D.N.C.). Further, Class Counsel have been appointed to leadership roles in other similar antitrust employment cases. *See*, *e.g.*, *In re: Ry. Indus. Emp. No-Poach Antitrust Litig.*, MDL No. 2850 (W.D. Pa.); *Houston v. Papa John's Int'l., Inc., et al.*, No. 3:18-cv-00825-JHM-RSE (W.D. Ky.); *Deslandes v. McDonald's, LLC, et al.*, No. 1:17-cv-04857 (N.D. Ill.); *Conrad v. Jimmy John's Franchise, LLC, et al.*, No. 18-cv-133-MJR-RJD (S.D. Ill.); *Blanton v. Domino's Pizza Franchising, LLC, et al.*, No. 18-cv-13207-VAR-DRG (E.D. Mich.); and *Ogden v. Little Caesar Enters., Inc.*, No. 18-cv-12792-DML-RSW (E.D. Mich.). Class Counsel are among the most prominent attorneys in the nation in this area of law, and their expertise is in no small part responsible for the excellent result obtained.

Finally, and as explained in more detail below, Class Counsel devoted significant time and resources to this case. In doing so, Class Counsel had to forego other litigation opportunities to focus on this litigation. This opportunity cost, too, supports a request for

7

25% of the common fund.

In short, the Court finds that attorney's fees equal to 25% of the common fund ($4,750,000) is reasonable, based on the resources Class Counsel advanced, the quality of Class Counsel's work and the results obtained, the risks and obstacles Class Counsel faced and overcame, and fees awarded in similar antitrust cases.

### 2. <u>Lodestar Cross-Check</u>

Where a settlement is the results of successive cases (or successive settlements within the same case), the proper method of performing a lodestar cross-check is to divide the total lodestar for the entire litigation campaign by the aggregate fees requested, including fees previously awarded. *See Ferris v. Sprint Commc'ns Co.L.P.*, Civ. A. No. 5:11-cv-0067-H, 2012 WL 12914716, at *3 (E.D.N.C. Dec. 13, 2012) (noting that litigation across the country for more than a decade resulted in settlements of similar cases, which prevent class counsel from "segregating their fees"); *Payne v. Sprint Commc'ns Co. L.P.*, Civ. A. No. 1:11-cv-3434-CCB, 2012 WL 13006270 (D. Md. Nov. 30, 2012) (same); *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1214 (N.D. Cal. 2010) (holding that time from separate, previous cases against the same defendant may count toward class action lodestar where "the work performed advanced [the pending] class action").

"Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee." *Phillips*, 2016 WL 2636289, at *8; *see also Singleton v. Domino's Pizza, LLC*, 976 F.Supp.2d 665, 689 (D. Md. 2013) (noting

that the lodestar multipliers "on large and complicated class actions have ranged from at least 2.26 to 4.5"); *Krakauer*, 2018 WL 6305785, at *5 (approving attorney's fee award with a lodestar multiplier of 4.39).

Here, Class Counsel provided evidence of an hourly market rate of between $560 and $700 for the primary partners on the case; between $395 and $535 for the primary associates, staff attorneys, and contract attorneys on the case; and $370-$420 for paralegals and other support staff. These rates are reasonable, in line with national market rates for the level of experience possessed by Class Counsel in complex antitrust class actions, and in line with hourly rates approved by courts as reasonable. *See*, *e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 793-94 (N.D. Ohio 2010); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1326-27 (W.D. Wash. 2009); *Fleming v. Kemper Nat'l Servs., Inc.*, 373 F. Supp. 2d 1000, 1012 (N.D. Cal. 2005).

The Court has also reviewed Class Counsel's time summaries, which cover more than 13,400 hours over the course of six years. Class Counsel expended more than 12,500 hours litigating the *Seaman* case and 883.2 hours litigating the Binotti case for a total lodestar of approximately $6.8 million. Harvey Decl. ¶ 8; Elliot Decl. ¶ 16; Payne Decl. ¶ 19. The Court previously held that the time spent in *Seaman* is reasonable, *Seaman v. Duke University*, No. 1:15-cv-00462-CCE-JLW, 2019 WL 4674758, at *4

9

2273456.2

Case 1:20-cv-00470-CCE-JLW   Document 59-2   Filed 07/12/21   Page 9 of 15

(M.D.N.C. Sept. 25, 2019), and the additional 883.2 hours spent in *Binotti* were efficient and necessary to obtain the settlement here.  Further, Class Counsel expended time efficiently by careful case management and avoiding duplication of efforts.  Harvey Decl. ¶ 8.  The Court finds that the time Class Counsel spent on the case is reasonable considering the complexity and number of issues addressed.

An award of 25% of the common fund, or $4,750,000, together with the attorney's fee award in the *Seaman* case ($18.16 million), represents a lodestar multiplier of 3.35.  This does not take into account hours Class Counsel will spend in support of final approval of the Settlement, and additional hours that will be required to supervise settlement distribution.  Thus, the lodestar multiplier will ultimately be smaller.  Class Counsel's zealous advocacy, the resources required and the risks involved, supports the multiplier.  A 3.35 multiplier is reasonable and appropriate here.

### B. <u>Expenses</u>

Under Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement.  Fed. R.Civ. P. 23(h).  "The prevailing view is that expenses are awarded in addition to the fee percentage."  *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007) (citation omitted).

Here, Class Counsel request reimbursement of expenses in the amount of $125,201.41.  The most significant expense—over $118,082.16—went to expert fees. The amount is reasonable in light of the critical role expert economic analysis plays in

class action antitrust litigation, where experts establish classwide impact and measure damages.  Here, Dr. Binotti hired economists to create a regression model to estimate damages.  Without this expert analysis, Dr. Binotti would not have been able to engage in informed settlement negotiations, nor would Dr. Binotti have met her burden at class certification or at trial.  The expert opinions clearly benefited the Class.

The Court finds that Class Counsel's cost reimbursement request is fair and reasonable.

### C. <u>Service Award</u>

It is common for courts to compensate class representatives "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (citation omitted).  Such awards are "common . . . in recognition of the time and effort [class representatives] have invested for the benefit of the class." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-CV-00271-JFA, 2012 WL 13008138, at *6 (D.S.C. July 31, 2012).  Courts consider numerous factors in determining the appropriate size of a service award, including, for example, the actions taken by the class representative to protect the class, the degree to which the class has benefited, the amount of time and effort expended by the class representative, the risk (financial and otherwise) assumed by the class representative, the notoriety and personal difficulties encountered by the class representative, the duration of the litigation, the personal benefit (or lack thereof) enjoyed by the class representative

from litigation, the ultimate recovery to the class, and the sums awarded in similar cases. *See* William B. Rubinstein et al., 5 *Newberg on Class Actions* § 17:13 (5th ed.).

Having considered these factors, the Court concludes that Dr. Binotti's request for a $65,000 service award is fair and reasonable. Dr. Binotti has devoted over 70 hours of her time to advancing this litigation, resulting in a $19 million benefit to the Class. She participated in litigation strategy, settlement negotiations, and mediation. Despite the fact the Class includes over 10,000 faculty members, no one else came forward to put their name on this lawsuit, and Dr. Binotti sought out contingent representation to investigate and prosecute claims on behalf of the non-medical faculty that were not covered by the *Seaman* settlement.

Just as importantly, Dr. Binotti put her professional career on the line when she came forward. Courts recognize that employees face unique pressures and a risk of retaliation by current or prospective employers when they sue their employers. *See*, *e.g.*, *In re High-Tech*, 2015 WL 5158730, at *17 (approving $100,000 service awards where named plaintiffs received media coverage and were likely to be viewed as "troublemakers" by future employers); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997) (recognizing that in an employment case, "the plaintiff is frequently a present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril"). Dr. Binotti attests that her relationships with other professors have been difficult as a

12

result of her leadership role in this case. Others in the community of romance scholars nationwide and internationally are aware of her role here. Indeed, there has been publicity about Dr. Binotti's role in this case, and the case has been covered in the local press. Dr. Binotti's exposure and the risk she faces weigh in favor of an appropriate service award here.

The Court also concludes that the amount of the service award, $65,000, is proportionate to the other Class Members' recoveries. Dr. Binotti's service award is approximately 20 times larger than each regular faculty class member's recovery, and the size of the award is comparable to that in other cases. *See In re High-Tech*, 2015 WL 5158730, at *18 (approving $100,000 service awards 14-21 times greater than average class member award); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318(RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (approving $125,000 service award); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *4, *8, *28 (S.D.N.Y. Nov. 30, 2010) (awarding $125,000 to class representative); *Marchbanks Truck Serv. v. Comdata Network, Inc.*, No. 07-CV-1078 (E.D. Pa. July 14, 2014), Dkt. 713 at 8 (approving class action settlement, including service payment of $150,000 to lead class representative); *Ivax Corp. v. Aztec Peroxides, LLC, et al.*, No. 02-CV-00593 (D.D.C. Aug. 24, 2005), Dkt. 78 at 2 (awarding $100,000 service payments to each class representative); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (en banc) (affirming antitrust class action settlement providing for service awards of $85,000 to two class representatives), *cert. denied,* 132 S. Ct. 1876 (2012); *See also Ingram v. The*

*Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 service payments to each of four representative plaintiffs); *Beck, et al. v. Boeing Co.*, No. 00-CV-0301-MJP (W.D. Wash Oct. 8, 2004), Dkt. 1067 at 4 (awarding $100,000 service payments to each named plaintiff); *Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *12-13 (E.D. Okla. Aug. 16, 2011) (awarding $100,000 service awards to employee class representatives for assuming risk of retaliation), *report and recommendation adopted*, 2011 WL 4475291 (E.D. Okla. Sept. 26, 2011).

Finally, the Court notes that neither of the "red flags" identified by the Fourth Circuit pertaining to service awards arise here: first, the relief to the rest of the class is not "perfunctory," as each class member's net recovery averages approximately $2,341.19; and, second, Dr. Binotti's service award is not conditioned on her support for the settlement. *Berry*, 807 F.3d at 613-14.

By filing this case and diligently performing her duties as the Class representative, Dr. Binotti has performed a valuable public service that will benefit thousands of faculty at Duke and UNC. In light of Dr. Binotti's contributions to the case, the fact that she was the only Class Member willing to come forward, the risks she faced and will continue to face, the reasonable ratio between her service award and other Class Members' recovery, and comparable service awards in similar cases, the Court concludes that the $65,000 request is fair and reasonable.

NOW, therefore, it is hereby **ORDERED**:

1. Class Counsel's request for 25% of the common fund in attorney's fees, or $4,750,000 is **GRANTED**.

2. Class Counsel's request for reimbursement of $125,201.41 in costs is **GRANTED**.

3. Dr. Binotti's request for a service award of $65,000 is **GRANTED**.

4. The Notice Administrator shall remit the aforementioned payments to Class Counsel and Dr. Binotti pursuant to the Settlement Agreement.

**IT IS SO ORDERED.**

This the _____ day of _____, 2021.

_____
Hon. Catherine C. Eagles
United States District Judge