# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF NORTH CAROLINA

## DURHAM DIVISION

| | |
|---|---|
| LUCIA BINOTTI, individually and on behalf of all others similarly situated,<br><br>               Plaintiff.<br><br>           v.<br><br>DUKE UNIVERSITY,<br><br>               Defendant. | Case No. 1:20-cv-00470<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Fed. R. Civ. P. 23 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................... 1
II.     STATEMENT OF FACTS ...................................................... 1
        A.      Procedural Background ............................................. 1
        B.      Terms of the Settlement ........................................... 4
                1.      Monetary Relief ............................................ 4
                2.      Release of Claims ......................................... 5
                3.      Opt-Out Period and Objections ..................... 5
                4.      *Cy Pres* Recipient ........................................ 5
III.    PROCEDURE FOR SETTLEMENT APPROVAL .............................................. 6
IV.     ARGUMENT ........................................................................ 9
        A.      The Settlement is Excellent, Fair, and Reasonable ...................................... 9
                1.      A $19 Million Cash Recovery ........................................... 9
        B.      Dr. Binotti and Class Counsel Vigorously Advanced the Class's Interests ................................ 11
        C.      The Allocation Plan Compensates Class Members Based on The Degree of Harm ................................ 12
        D.      The Proposed *Cy Pres* Recipient Is Appropriate ...................................... 13
        E.      The Notice Effectively Apprised Class Members of Their Rights ............ 14
        F.      The Requirements for Class Certification Are Met .................................. 15
V.      CONCLUSION .................................................................. 17

2278056.3

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014) ................................................................................... 12

*Brunson v. La.-Pac. Corp.*,
  818 F.Supp.2d 922 (D.S.C. 2011) ............................................................................. 10

*Cox v. Branch Banking & Trust Co.*,
  No. 5:17-cv-1982, 2019 WL 164814 (S.D. W.Va. Jan. 10, 2019) ......................... 8, 10

*Domonoske v. Bank of Am., N.A.*,
  790 F.Supp.2d 466 (W.D. Va. 2011) ......................................................................... 15

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013) ................................................................................... 12

*In re High-Tech Antitrust Litig.*,
  No. 11-cv-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sep. 2, 2015) ....................... 12

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ....................................................................................... 8

*Klier v. Elf Atochem N. Am., Inc.*,
  658 F.3d 468 (5th Cir. 2011) ..................................................................................... 13

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ..................................................................................... 13

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ...................................................................................... 13

*Scardelletti v. Debarr*,
  43 Fed. Appx. 525 (4th Cr. 2002) ............................................................................... 8

## RULES

Fed. R. Civ. P. 23(e) ..................................................................................................... 6, 8

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................. 15

Fed. R. Civ. P. 23(e)(2) ................................................................................................... 8

## TREATISES

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) ................................................. 6

William B. Rubinstein, 4 *Newberg on Class Actions* § 12:32 (5th ed. 2019) ................. 13

William B. Rubinstein, 4 *Newberg on Class Actions* § 13:1 (5th ed. 2019) ..................... 6

## I.    <u>INTRODUCTION</u>

Plaintiff Dr. Lucia Binotti and Defendant Duke University ("Duke") agreed to resolve the Class's claims for $19 million.  Dkt. 40, 58.  On April 22, 2021, the Court granted preliminary approval of the Settlement after finding that it was fair, reasonable, and adequate.  Dkt. 55.  The Court directed that notice of the Settlement be given to Class Members so that they could have an opportunity to weigh in, including by opting out or objecting.  *Id.* at 12-13.  The Settlement Administrator has completed the notice program ordered by the Court.  Dkt. 65.  Not a single Class Member objected.  *Id.* ¶ 10.  Only eight individuals out of approximately 15,789 Class Members opted out.  Supp. Decl. of Amy Fringer ¶ 4.  Thus, over 99% of Class Members chose to release their claims in exchange for their share of the Settlement.  This support confirms the Court's preliminary conclusions.

Dr. Binotti respectfully requests that the Court now grant final approval to the Settlement and authorize disbursement of funds to the Class.

## II.   <u>STATEMENT OF FACTS</u>

### A.    <u>Procedural Background</u>

The procedural history of this case is set forth in Dr. Binotti's motion to direct notice to the Class and pending motion for approval of attorney's fees.  Dkt. 40 at 1-3 & Dkt. 59-1 at 2-4.  Nevertheless, Dr. Binotti briefly recounts the most significant milestones here.  This case began on May 27, 2020, when Dr. Binotti alleged an illegal understanding between Duke and UNC to suppress competition for each other's non-

2278056.3

medical faculty (the "No-Poach Understanding"). Dkt. 1. Dr. Binotti's understanding of the relevant facts depended upon a closely-related prior case, *Seaman v. Duke University*, No. 1:15-cv-00462-CCE-JLW (M.D.N.C.), in which the undersigned served as Class Counsel. That case concerned claims of medical faculty of Duke and UNC, and was resolved by two settlements, the first with UNC and the second with Duke. Order Granting Final Approval Class Action Settlement ("UNC Order"), *Seaman v. Duke Univ.*, No. 1:15-cv-00462-CCE-JLW (M.D.N.C. Jan. 4, 2018), Dkt. 185; Order Granting Final Approval Proposed Class Action Settlement ("Duke Order"), *Seaman v. Duke Univ.*, No. 1:15-cv-00462-CCE-JLW (M.D.N.C. Sept. 24, 2019), Dkt. 387. The settlement with UNC included significant, university-wide injunctive relief. UNC Order, Dkt. 185. The settlement with Duke included a common fund of $54.5 million, and an unprecedented role for the United States Department of Justice to enforce injunctive relief provisions that concerned the entire university. Duke Order, Dkt. 387. While *Seaman* resolved the damages claims of medical faculty and provided injunctive relief to the benefit of all faculty, the damages claims of non-medical faculty remained unaddressed.

To obtain compensation for non-medical faculty such as herself, Dr. Binotti filed her Class complaint. Dkt. 1. On July 27, 2020, Duke answered the complaint and filed a Motion for Judgment on the Pleadings, arguing that (1) Dr. Binotti's claims were barred by the statute of limitations, and (2) Dr. Binotti failed to make factual allegations sufficient to toll the statute of limitations based on fraudulent concealment. Dkts. 16, 17. On November 9, 2020, the Court denied the motion regarding the statute of limitations.

2278056.3

Dkt. 33.  The Court held it was plausible that the alleged multi-decade conspiracy continued beyond 2011 and that Duke continued to commit overt acts within the statute of limitations.  *Id.*  The Court, however, limited damages claims to those sustained after 2016, concluding that Dr. Binotti had not plausibly alleged an active act of concealment, the first prong of the fraudulent concealment test.  *Id.*

The parties then made a renewed effort to resolve the matter, involving extensive negotiations that culminated in an arm's length, full-day mediation held on December 16, 2020 with mediator Jonathan Harkavy.  Dkt. 41 ¶ 5.  That mediation resulted in the proposed Settlement, which the Court preliminarily approved on April 22, 2021 (Dkt. 55), as amended on June 14, 2021 (Dkt. 58).  Class counsel filed their motion for attorneys' fees and costs, and a service award for Dr. Binotti, on July 12, 2021.  Dkt. 59.

The parties and the Settlement Administrator implemented the notice program according to the Court's order.  Duke and UNC provided Class member data to the Settlement Administrator, Rust Consulting, Inc. ("Rust"), on May 21, 2021 and May 27, 2021.  Dkt. 65 ¶ 2.  On June 28, 2021, Rust sent the long-form notices approved by the Court to all Class Members by mail and e-mail.  *Id.*  Prior to mailing, Rust updated mailing addresses through the National Change of Address database.  *Id.*  Rust also established a website for the Class that included all Court documents concerning this Settlement.  *Id.* ¶ 4.

2278056.3

The Notice program has been effective. The website has registered over 4,652 unique visits. Dkt. 65 ¶ 4. Only 2,566 mailed notices were returned as undeliverable, and the Notice Administrator was able to identify corrected addresses for 1,990 of those people. *Id*. ¶ 4. Additionally, the Settlement Administrator has received and responded to 29 Class Member inquiries via e-mail, and 197 via telephone. *Id.* ¶¶ 7, 8. Class Counsel received five email inquiries from Class Members or potential Class Members, responded directly to four individuals, and forwarded all inquiries to the claims administer for follow-up as needed. Decl. of Dean M. Harvey ¶ 2. Not a single Class Member objected to the Settlement, Dr. Binotti's request for a service award, or Class Counsel's request for attorney's fees and expenses. Dkt. 65 ¶ 10. In addition, only eight individuals requested to opt out of the Settlement. Supp. Fringer Decl. ¶ 4.

**B.     Terms of the Settlement**

The Settlement Agreement was previously filed as an attachment to the Declaration of Dean M. Harvey in Support of Plaintiff's Unopposed Motion to Direct Notice to the Class. Dkt. 42 (hereinafter "Settlement"). The Settlement Class is the same one preliminary certified by the Court on April 22, 2021 and amended on June 14, 2021 (Dkts. 55, 58), with a Class period from October 1, 2012 to February 5, 2018. Dkt. 55 at 2.

**1.     Monetary Relief**

Duke will pay $19 million into a non-reversionary common fund. Settlement ¶¶ III(1)-(3). Each Class Member's recovery will be calculated in approximate

- 4 -

proportion to their alleged harm, consistent with Dr. Binotti's damages theory.  *See* Settlement, Ex. B (Plan of Allocation).  The formula accounts for the fact that Class members who earned more or worked longer were allegedly harmed more than those who worked for a shorter period or earned lower compensation.

### 2.      Release of Claims

The Settlement releases Class Members' claims against Duke up to the effective date of the Settlement regarding restraints on competition for faculty, but does not affect any claims that Class Members may have regarding their individual employment relationship with Duke University.  Settlement ¶ V(1).

### 3.      Opt-Out Period and Objections

Class Members who wished to opt-out of the Class were able to do so by submitting a request for exclusion to the Notice Administrator.  Settlement ¶ II(E)(1). The opt-out period ended on July 28, 2021, 30 calendar days after the Notice Administrator published notice (through local newspapers and social media), mailed notice (through both email and U.S. Mail), made a case-specific website available, and provided a phone number that Class Members could use to ask questions.  Dkt. 65 ¶¶  3, 4, 8, 10.  Only eight persons opted out.  Supp. Fringer Decl. ¶ 4.  Class Members also had the opportunity to object to the Settlement, ¶ II(D), but none did so.  Dkt. 65 ¶ 10.¶

### 4.      *Cy Pres* Recipient

The Settlement provides that, if monies remain following all distribution efforts and the remaining funds are insufficient to issue additional distributions to Class

2278056.3

Members, the remainder may be distributed *cy pres* to the American Antitrust Institute.
Settlement ¶ IV(A)(8).

## III.   PROCEDURE FOR SETTLEMENT APPROVAL

A class action may not be settled without court approval.  *See* Fed. R. Civ. P.
23(e).  Approval is a two-step process of "preliminary" and "final" approval.  *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004).  The committee notes to the 2018 amendments to Rule 23 discuss the breadth and types of information parties should submit to the court when seeking preliminary approval of a settlement class.  *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  As a general standard, the notes state that the proponents of the settlement should ordinarily provide the court with "all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members."  *Id*.  That guidance exemplifies what has been called the "frontloading" effect of the 2018 amendments.  This first step, the frontloading work of preliminary approval, is now behind us: the Court previously granted Dr. Binotti's motion to direct notice to the class.  Dkts. 55, 58.

After the Court directs notice, "notice is sent to the class describing the terms of the proposed settlement, class members are given an opportunity to object or . . . to opt out of the settlement, and the court holds a fairness hearing at which class members may appear and support or object to the settlement."  4 William B. Rubinstein et al., *Newberg on Class Actions* § 13:1 (5th ed. 2019) ("*Newberg*").  Finally, "taking account of all the

- 6 -

information learned during that process, the court decides whether or not to give 'final approval' of the settlement." *Id.*

Having completed the notice program and provided the Court with all relevant details regarding Class Member's response to the Settlement, Dr. Binotti now requests that the Court take the final step of holding a fairness hearing and granting final approval of the Settlement.

The court may approve a class action settlement only after finding that it is fair, reasonable, and adequate. The 2018 amendments to Rule 23 provide new guidance to courts to determine whether settlements are fair, reasonable, and adequate. As amended, Rule 23(e)(2) specifically instructs courts to consider whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

- 7 -

2278056.3

Fed. R. Civ. P. 23(e)(2). While the text of Rule 23 has been expanded, the purpose of the amendment was not to increase the factors courts consider but rather to re-focus settlement approval on the core concerns. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

In determining whether a settlement is fair, the district court examines whether "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the relevant area of class action litigation." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991); *see also Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002). The Court should also "be satisfied that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Cox v. Branch Banking & Tr. Co.*, No. 5:17-cv-1982, 2019 WL 164814, at *2 (S.D. W.Va. Jan. 10, 2019) (citation and omitted).

In considering the settlement's adequacy, the court considers the "(1) relative strength of [the plaintiffs'] case on the merits, (2) existence of any difficulties of proof or strong defenses [the plaintiffs] are likely to encounter if the case goes to trial, (3) anticipated duration and expense of additional litigation, (4) solvency of [the defendants]

2278056.3

and likelihood of recovery of a litigated judgment, and (5) degree of opposition to the settlement." *Id.*

## IV.   <u>ARGUMENT</u>

As the Court preliminarily found, the Settlement is fair, reasonable, and adequate. The Class's clear support for the Settlement, following an appropriate notice process, confirms the Court's preliminary conclusion. The Court should now grant final approval of the Settlement.

### A.   <u>The Settlement is Excellent, Fair, and Reasonable</u>

#### 1.   <u>A $19 Million Cash Recovery</u>

The Court already held that, in light of the risks of continued litigation, the $19 million monetary recovery "is a strong a result for the class." Dkt. 55 at 11. As explained in the motion to direct notice to the Class, the Settlement amount is excellent in light of the high-risk and complex nature of Dr. Binotti's claims. Regular rank faculty, who worked the longest and were paid the most, and thus suffered the most harm under Dr. Binotti's theory, will receive an average gross recovery of $3,207 per person. Non-regular rank faculty, who worked short periods of time and were paid much less and thus suffered less harm under Dr. Binotti's theory, will still receive an average gross recovery of $208. This result is excellent given the Court's decision that the claims for damages before 2016 are barred by the statute of limitations (Dkt. 33 at 2, 4-5), and for damages after 2016, the Class would face the challenge of persuading a jury that Duke and UNC continued their alleged no-poach agreement even after Dr. Seaman filed her complaint on

2278056.3

June 9, 2015. Dr. Binotti would have sought reconsideration of the decision, or an appeal, but there is no guarantee Dr. Binotti would have prevailed. This weighs in favor of final approval because "continued litigation risks the possibility of little or no recovery for Plaintiffs." *See Brunson v. La.-Pac. Corp.*, 818 F.Supp.2d 922, 926 (D.S.C. 2011). Settling the case at this juncture "affords a substantial and immediate remedy for the Class Members while obviating the need for further expensive and time-consuming discovery and motion practice; a lengthy, uncertain and expensive trial; and appeals on numerous complex legal and factual issues." *Id*. at 927 (finding that the fairness of the settlement weighed in favor of final approval, particularly considering the risk, complexity, and expense of continued litigation).

In short, these risks counsel in favor of the Settlement. Class Counsel, based on its familiarity with the record, prior work in this case and *Seaman*, and consultation with Dr. Binotti, weighed these risks and concluded that a guarantee of $19 million would better serve the Class's interests than gambling with dispositive motions, potential appeals, and trial. As the Court recognized, "counsel for Dr. Binotti have extensive experience in antitrust and class action litigation, and their informed opinion is entitled to some weight." Dkt. 55 at 10. *See also Cox*, 2019 WL 164814, at *2 (recognizing that class counsel "who are both experienced in prosecuting and defending complex class action claims" and with a "clear view of the strengths and weaknesses of their cases" are "in a strong position to make an informed decision regarding the reasonableness of a potential settlement" (citation omitted)).

- 10 -

**B.**     **Dr. Binotti and Class Counsel Vigorously Advanced the Class's Interests**

Dr. Binotti has represented the Class well.  This is the first and only case asserting damages claims for non-medical faculty regarding the allegations in Dr. Binotti's complaint.  Without the efforts of Dr. Binotti, these claims would have gone unaddressed, and the Class would not receive compensation for the misconduct Dr. Binotti alleges. After filing this action, Dr. Binotti closely monitored developments, helped the undersigned negotiate and evaluate possible settlements, and attended the mediation that ultimately resulted in an agreement.  Dkt. 41 ¶ 11.

Class Counsel have also advanced the Class's interests, including vigorously defending against Duke's Motion for Judgment on the Pleadings.  Dkt. 41 ¶¶ 2, 14.  The motion involved complex questions of law, prompting the Court to grant permission for the Parties to supply supplemental briefing.  Dkts. 28, 32.  Class Counsel's work in this case depended upon their prior work in the *Seaman* litigation.  When *Seaman* was filed, Dr. Seaman was only aware of the alleged no-poach agreement between the Duke and UNC medical schools.  Through discovery in that litigation, Class Counsel unearthed documentary evidence and elicited witness testimony regarding an allegedly broader understanding between Duke and UNC that involved the entire universities.  In *Binotti*, Class Counsel also retained qualified economic experts to estimate the extent to which the alleged misconduct suppressed Class pay.  Dkt. 41 ¶ 5.  That estimate informed the settlement negotiations with Duke.  *Id.*

2278056.3

In sum, the Court should conclude that Class Counsel and Dr. Binotti have vigorously represented the Class's interests.

## C.    The Allocation Plan Compensates Class Members Based on The Degree of Harm

The Court previously concluded that "[t]he proposed allocation plan is fair and reasonable as it will compensate Class Members on a pro rata basis according to the degree of alleged harm they suffered."  Dkt. 55 at 11-12.  Specifically, each Class Member will receive an amount based on the total compensation they received from Duke or UNC while working in a Class position during the Class Period, divided by the total compensation received by all Class Members in those positions during that time. This formula accounts for the fact that employees who worked longer or with higher salaries were allegedly harmed more.  *See* Dkt. 58 at 4; *In re High-Tech Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015) (in no-poach case, approving identical allocation plan because it "provides a neutral and uniform metric by which to allocate the Settlement, consistent with Plaintiffs' expert opinions"); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) (observing that allocation plan "need not meet standards of scientific precision" so long as it "[has] a reasonable and rational basis"); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 107 (E.D. Pa. 2013) ("In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." (citation omitted)).

No Class Member has objected to the allocation plan.  The Court should affirm that the proposed pro-rata distribution is fair and reasonable.

- 12 -

2278056.3

**D.**      <u>The Proposed *Cy Pres* Recipient Is Appropriate</u>

"[A] *cy pres* distribution is designed to be a way for a court to put any unclaimed settlement funds to their 'next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'" *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007). The doctrine does not require "that settling parties select a *cy pres* recipient that the court or class members would find ideal," but rather only that there be "a substantial nexus to the interests of the class members" in light of "the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (citation omitted). Generally, courts approve *cy pres* distributions "only when more redistribution is no longer feasible." *Newberg* § 12:32. Here, a *cy pres* distribution would occur only if redistribution of any unclaimed funds to Class Members would not be economically feasible. Settlement ¶ IV(A)(8).

Dr. Binotti proposes that the Court designate the American Antitrust Institute (AAI) as the *cy pres* recipient. This is the same *cy pres* recipient the Court previously approved regarding the earlier Settlement in *Seaman*. Duke Order, Dkt. 387 at 11-12. The AAI is an independent, nonprofit organization devoted to promoting competition that protects consumers, businesses, and society. Its mission includes "research, education, and advocacy on the benefits of competition and the use of antitrust enforcement as a

2278056.3

vital component of national and international competition policy."[1]  The AAI would be a

suitable *cy pres* recipient in light of its track record advocating specifically against no-

poach agreements on behalf of workers.[2]  In Class Counsel's judgment, the AAI is an

appropriate *cy pres* recipient whose mandate bears a sufficient nexus to this case and to

the advancement of Class Members' interests.  Thus, Class Counsel recommends the

Court authorize *cy pres* funds to the AAI.

### E.     The Notice Effectively Apprised Class Members of Their Rights

As ordered by the Court, the Notice Administrator has delivered individual notice

to Class Members by mail and e-mail.  Dkt. 65 ¶ 3.  The notice explained the nature of

this case, the terms of the proposed Settlement, the requested attorney's fees and costs

and service award, and provided Class Members with an opportunity to opt out or file an

objection.  *Id.*, Exs. A, B.  All material case documents and Settlement-related documents

were also posted to a publicly-accessible website, which included instructions to contact

Class Counsel and the Settlement Administrator with questions about the Settlement.  *Id.*

---

[1] Am. Antitrust Inst., *Mission and History*, https://www.antitrustinstitute.org/about-us/ (last visited July 30, 2021).

[2] *See*, *e.g.*, Randy Stutz, *AAI Issues New White Paper on the Antitrust Treatment of Labor-Market Restraints*, Am. Antitrust Inst. (July 31, 2018), https://www.antitrustinstitute.org/work-product/2246/; Randy Stutz, *AAI Asks FTC and DOJ to Deliver on Promise of Tough Sanctions for Naked Wage-Fixing Agreements (In the Matter of Your Therapy Source)*, Am. Antitrust Inst. (Aug. 31, 2018), https://www.antitrustinstitute.org/work-product/aai-asks-ftc-and-doj-to-deliver-on-promise-of-tough-sanctions-for-naked-wage-fixing-agreements-in-the-matter-of-your-therapy-source/; Diana L. Moss & Randy Stutz, *AAI Says DOJ Too Lenient on Vertical Franchise No-Poaching Agreements*, Am. Antitrust Inst. (May 2, 2019), https://www.antitrustinstitute.org/work-product/aai-says-doj-too-lenient-on-vertical-franchise-no-poaching-agreements/.

- 14 -

¶ 4.  The Settlement Administrator also published ads on LinkedIn and Facebook, which resulted in 763,310 impressions and 1,665 clicks, as well as the online publications of two local newspapers, the Daily Tar Heel and The Chronical, which resulted in a total of 79,393 impressions and 78 clicks.  Suppl. Fringer Decl. ¶¶ 2,3, Exs. A, B.  Further, Class Members are employees in a tightly-knit academic community in the same locale, and this case has already received publicity.[3]  In light of these factors, the notice program comported with the requirements of Rule 23 and due process.  *See* Fed. R. Civ. P. 23(e)(1)(B) (notice must be given to class "in a reasonable manner"); *Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 472 (W.D. Va. 2011) ("In the context of a class action, the due process requirements of the Fifth Amendment require reasonable notice combined with an opportunity to be heard and withdraw from the class." (citation omitted)).

## F.    <u>The Requirements for Class Certification Are Met</u>

Dr. Binotti also respectfully requests that the Court certify the following Settlement Class:

---

[3] *See*, *e.g.*, Connie Gentry, *An Improper Pact Between UNC, Duke?*, Triangle Bus. J. (July 31, 2020), https://www.bizjournals.com/triangle/news/2020/07/31/duke-unc-class-action-lawsuit-salaries.html; Leah Boyd, *UNC Professor Sues Duke, Alleges Agreement with UNC to Suppress Competition for Faculty*, Duke Chron. (May 28, 2020), https://www.dukechronicle.com/article/2020/05/duke-university-unc-professor-sues-duke-alleges-agreement-suppress-competition-faculty-lawsuit; Daphne Zhang, *Insurer Must Face Duke's Suit Over Antitrust Class Actions*, Law 360 (June 8, 2021), https://www.law360.com/articles/1391964/insurer-must-face-duke-s-suit-over-antitrust-class-actions.

- 15 -

> All natural persons employed by Duke University or the University of North Carolina, Chapel Hill from October 1, 2001 through February 5, 2018, as a faculty member. Excluded from the Class are: members of the boards of directors and boards of trustees, boards of governors, senior administrators of Duke and UNC, unpaid faculty, and faculty with an academic appointment at the School of Medicine; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

Dk. 58 at 5. The Court has already determined this proposed Settlement Class meets the Rule 23(a) prerequisites. Dkt. 55 at 3. First, the Court correctly concluded in its Order Granting Notice to the Class that the over 15,000 Settlement Class members are "so numerous that joinder of all members is impractical." Dkts. 55 at 3, 58. Second, the Court correctly held that commonality is satisfied because the question of whether Duke and UNC entered into a no-poach agreement restraining recruitment and hiring overshadows other issues. Dkt. 55 at 3. Third, the Court properly concluded Dr. Binotti has claims that are typical of the Settlement Class because she shares "the same alleged injuries arising from the same alleged conduct: suppression of [ ] compensation due to the alleged no-poach agreement." *Id*. at 3-4. Fourth, the Court correctly held Dr. Binotti adequately represents the Class because Dr. Binotti and the Class share the same interest in "proving that Duke's conduct violated antitrust laws and suppressed compensation and mobility as a result." *Id*.

The Court also correctly concluded the predominance and superiority requirements of Rule 23(b)(3) are satisfied. Dkt. 55 at 5. The Court held predominance is met because there are two important questions that can be answered with common proof absent individual inquiries: (1) whether the no-poach agreement injured Dr. Binotti

- 16 -

and the Class, and (2) whether damages can be measured through a common method. *Id.* at 6. The Court also held that superiority is satisfied because class treatment is the superior procedure given there is no other litigation concerning this matter currently pending and there is a substantial interest in resolving the issues raised in this litigation in one forum. *Id.* No facts or law have changed since the Court reached these conclusions. In sum, there is no reason for the Court to deviate from its previous conclusion that the Rule 23(a) and Rule (b)(3) requirements are met. The Court should certify the Class for the purpose of Settlement.

## V. **CONCLUSION**

For the above reasons, Dr. Seaman respectfully requests that the Court: (1) finally approve the Settlement as fair, reasonable, and adequate; (2) certify the Class; (3) approve the proposed Plan of Allocation; and (4) enter a Final Approval Order and Judgment.

2278056.3

Dated: August 2, 2021          Respectfully submitted,

*/s/ Dean M. Harvey* _____

Dean M. Harvey*
Anne B. Shaver*
Lin Y. Chan*
Yaman Salahi*
Jallé Dafa*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
dharvey@lchb.com
ashaver@lchb.com
lchan@lchb.com
ysalahi@lchb.com
jdafa@lchb.com
* appearing pursuant to LR83.1(d)

*/s/ M. Travis Payne* _____

M. Travis Payne
N.C. State Bar No. 8452
EDELSTEIN & PAYNE
315 East Jones Street
Raleigh, NC 27601
Telephone: (919) 828-1456
Facsimile: (919) 828-4689
eandp@mindspring.com

2278056.3

/s/ Robert M. Elliot

Robert M. Elliot
N.C. State Bar No. 7709
Daniel Lyon
N.C. State Bar No. 43828
ELLIOT MORGAN PARSONAGE, PLLC
426 Old Salem Rd.
Brickenstein-Leinbach House
Winston-Salem, NC 27101
Telephone: (336) 724-2828
Facsimile: (336) 724-3335
rmelliot@emplawfirm.com

*Counsel for Individual and Representative Plaintiff Lucia Binotti*

## <u>CERTIFICATE OF COMPLIANCE WITH CIVIL LOCAL RULE 7.3</u>

I hereby certify that the BRIEF IN SUPPORT OF MOTION TO FILE UNDER

SEAL complies with Local Rule 7.3(d) and contains fewer than 6,250 words.

This the 2nd day of August, 2021.

*/s/ Dean M. Harvey*

Dean M. Harvey

2278056.3

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2021, I electronically served the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Dean M. Harvey*                 
Dean M. Harvey

2278056.3