IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LUCIA BINOTTI, individually and on behalf of all others similarly situated,<br><br>    Plaintiff.<br><br>    v.<br><br>DUKE UNIVERSITY,<br><br>    Defendant. | Case No. 1:20-CV-470<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

This matter is before the Court on motion by Plaintiff Dr. Lucia Binotti for final approval of a class action settlement with Duke University ("Duke"). A final fairness hearing at which counsel for all parties and Class Members had an opportunity to appear was held on August 25, 2019. The Court having considered the motion, all other papers filed concerning that motion, and all other pertinent documents and pleadings, and counsel and all interested parties having been heard at a final fairness hearing, **GRANTS** Plaintiff's motion, enters final judgment, and dismisses this action with prejudice.

## FACTORS FOR CLASS CERTIFICATION

The proposed Settlement Class is defined as:

> All natural persons employed by Duke University or the University of North Carolina, Chapel Hill from October 1, 2001 through February 5, 2018, as a faculty member. Excluded from the Class are: members of the boards of directors and boards of trustees, boards of governors, senior administrators of Duke and UNC, unpaid faculty, and faculty with an academic appointment at the School of Medicine; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

Doc. 58 at 4-5.

When a settlement is reached before Rule 23 certification, a class may be certified solely for the purposes of settlement. *Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 2:10-CV-10-F, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011).

The parties seeking class certification must meet the four prerequisites of Federal Rules of Civil Procedure 23(a)(1) through (4): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *Cerrato v. Durham Pub. Sch. Bd. of Educ.*, No. 1:16CV1431, 2017 WL 2983301, at *2 (M.D.N.C. Mar. 17, 2017). The Court will certify the class for purposes of settlement.

First, the Settlement Class—which has over 15,000 members—is so numerous that joinder of all members is impracticable.

Second, commonality is satisfied because the common question of whether Duke and UNC entered into an unlawful agreement is "dispositive and over-shadow[s] other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Specifically, the following major factual and legal issues are common to the Settlement Class: whether Duke and UNC entered into a no-poach agreement restraining recruitment and hiring, the agreement's scope and duration, and its effect on compensation.

Third, Dr. Binotti—who has worked as a non-medical faculty member at UNC since 1990, Doc. 1 at ¶ 9, and allegedly was paid less during the Class Period as a result of the alleged agreement—has claims that are typical of the Settlement Class. *Deiter v. Microsoft Corp.*, 436 F. 3d 461, 466 (4th Cir. 2006) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."). Dr. Binotti shares with the Settlement Class Members the same alleged

injuries arising from the same alleged conduct: suppression of their compensation due to the alleged no-poach agreement.

Lastly, Dr. Binotti adequately represents the class. "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 117 S. Ct. 2231, 2250 (1997). The Court has carefully evaluated whether Dr. Binotti adequately represents the Class, as intra-class conflicts may arise where, as here, some of the Class claims are potentially time-barred, if the settlement value of one set of claims (e.g., "timely" or "time-barred") is substantially higher than the other. *See In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 389 (3d Cir. 2015); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981). However, a conflict will only defeat the adequacy requirement if it is fundamental. *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019). A conflict is not fundamental if all class members: (1) "share common objectives and the same factual and legal positions," and (2) have the same interest in proving the defendant's liability. *Id.* (citation omitted). Here, Dr. Binotti and the Class have the same interest in proving that Duke's conduct violated antitrust laws and suppressed compensation and mobility as a result. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272-73 (3d Cir. 2009) (rejecting a time-period conflict argument because the class members "shared a unified interest" in establishing liability). There is nothing to indicate that any unnamed Class Members would assert a different legal or factual position to prove Duke's liability or to measure the damages resulting from the alleged conspiracy. *See Sharp Farms*, 917 F.3d at 295 (holding a fundamental conflict existed where, because

3

of divergent legal theories, the settlement "would provide broader relief to [part of] the settlement class at the expense of [other] class members . . ..").  Approximately 95% of Class Members have claims in both periods, Doc. 51 at ¶ 4, and share Dr. Binotti's interest in maximizing damages for both periods.  Moreover, the adequacy of the settlement does not rest only on the value of one set of claims; each set of claims had strengths and weaknesses and after careful investigation and consideration, Dr. Binotti and her counsel concluded that that there was no basis to value the claims of one period differently than the other.  Doc. 49-1 at ¶¶ 5-6.  There appears to be a reasonable and rational basis to distribute the settlement funds evenly throughout the Class Period, as proposed in the Settlement Agreement.  *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) ("The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis.") (citation omitted); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d at 220 (suggesting circumstances in which an "even spread" across two time periods might be appropriate).  Considering the percentage of Class Members with claims in both periods and the similar valuation of the claims, any intra-class conflict arising from the fact that the Class Period covers "timely" and "time-barred" claims is minimal and is not a fundamental conflict sufficient to defeat the adequacy requirement at this stage.

      Class certification is therefore appropriate if the predominance and superiority requirements of Rule 23(b)(3) are satisfied.  Fed. R. Civ. P. 23(b)(3).  First, "questions of law or fact common to class members [must] predominate over any questions affecting

4

only individual members . . ..." *Id.* Second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* In settlement-only certification cases, "a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Windsor*, 117 S. Ct. at 2248.

    a. Here, predominance is met because the significant legal and factual questions pertinent to the underlying cause of action that can be answered with common proof and without individual inquiries include (1) whether Duke entered an agreement violating the antitrust law; (2) whether the agreement injured Plaintiff and the Class; and (3) whether damages can be measured through a common method. *See In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 344 (D. Md. 2012). The same is true for impact and damages. Proof of injury is not individualized, it instead depends on a common theory that pay structures at Duke and UNC were systematically suppressed, thus affecting all class members.

    b. Superiority is also satisfied. Class treatment of the legal issues identified in this case would be superior to other procedures for the handling of the claims. No other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending. Furthermore, this Court has a substantial interest in the resolution of the issues raised in this litigation occurring in a single forum.

Based on these findings and reasons, the Court hereby certifies the Settlement Class under Rule 23(b)(3).

The Court hereby appoints Dr. Binotti and her counsel as Settlement Class Representative and Settlement Class Counsel.

Appointment of Dr. Binotti as Settlement Class Representative is appropriate because she is a member of the Settlement Class, she has adequately represented the interests of the Settlement Class in the past, and there is nothing to indicate that she will be unable to represent those interests in the future.

Appointment of Lieff, Cabraser, Heimann & Bernstein, LLP (LCHB), Elliot Morgan and Parsonage, P.A. (EMP), and Edelstein & Payne (EP) as Settlement Class Counsel is appropriate. In evaluating the appointment of class counsel, courts must consider: (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Counsel's work in identifying and investigating the claims at issue in this action dates back many years. *See* Doc. 49-1 at ¶ 8, Doc. 41 at ¶ 13. LCHB and EMP successfully negotiated a settlement for the medical faculty at UNC and Duke in *Seaman v. Duke University*, No. 1:15-cv-00462 (M.D.N.C.), an action arising out of the same alleged no-poach agreement. Doc. 41 at ¶ 13; Doc. 49-1 at ¶¶ 8. Through discovery in that litigation, counsel obtained documentary evidence and elicited witness testimony revealing the alleged agreement stretched beyond the medical schools. Doc. 41 at ¶ 13.

6

Second, LCHB, EMP, and EP have significant experience handling class actions, including antitrust and employment class actions. Doc. 44 at ¶¶ 3-12; Doc. 43 at ¶¶ 3-7.

Third and relatedly, LCHB, EMP, and EP have demonstrated their knowledge of the applicable law by successfully negotiating a Settlement here and the *Seaman* settlement and by successfully defending against part of Duke's motion for judgment on the pleadings, despite the unsettled case law underlying some of its theories for proving liability. Doc. 33 at 3-4. Counsel thereafter renewed settlement discussions with Duke, recognizing the risks of litigation for both sides. Doc. 49-1 at ¶¶ 11-13.

Fourth, LCHB, EMP, and EP have devoted ample resources to litigating this action and to negotiating the Settlement. *Id.* at ¶¶ 9-13; Doc. 43 at ¶¶ 8-9; Doc. 44 at ¶¶ 13-14.

## FACTORS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1. Dr. Binotti's motion for final approval of the proposed Settlement is **GRANTED**.

Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

The Court makes the following FINDINGS under Federal Rule of Civil Procedure 23:

   a. "It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Reed v. Big Water Resort, LLC*, No. 2:14-cv-101583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (noting the "strong judicial policy in favor of settlements,

7

particularly in the class action context" (citation omitted)); 4 William B. Rubenstein et al., *Newberg on Class Actions* § 13.44 & n.1 (5th ed. 2018) ("*Newberg*") (collecting cases).

The Court previously granted preliminary approval of the Settlement, finding that it was fair, reasonable, and adequate, and that the Court was likely to grant final approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e)(2). *See* Doc. 55. Accordingly, notice to the Class was distributed on June 28, 2021, pursuant to the Court-approved notice plan. Doc. 65 ¶ 3. The Class had 30 days to object or, if eligible, to opt-out of the Settlement. There was only one objection and only 8 Class Members opted out. Supp. Decl. of Amy Fringer, Doc. 68 ¶ 4; Second Supp. Decl. of Amy Fringer, Doc. 70-4 ¶ 2. "[T]aking account all of the information learned during [the notice process], the court [now] decides whether or not to give 'final approval' to the settlement." *Newberg* § 13:1.

A class settlement may be approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *Jiffy Lube*, 927 F.2d at 158-59).

A four-factor test is applied to determine the fairness of a proposed settlement: "(1) the posture of the case at the time the proposed settlement was reached, (2) the

8

extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue." *Id.* at *24.

All four fairness factors favor approval here, as the Court held at preliminary approval. *See* Doc. 55 at 11-12. The Settlement was reached after adversarial litigation, including Duke's Motion for Judgment on the Pleadings, which involved complex questions of law prompting the Court to grant permission for the Parties to supply supplemental briefing. Docs. 28, 32. Further, Class Counsel's work in the *Seaman* litigation set the stage for these settlement negotiations. Class Counsel also retained qualified economic experts to estimate the extent to which the alleged misconduct suppressed Class pay. Doc. 41 at ¶ 5. Counsel for both sides had sufficient information to evaluate the costs and benefits of settlement at this juncture. The parties' negotiations were adversarial and at arm's-length. The negotiations were facilitated through the capable work of a neutral third-party mediator, Jonathan Harkavy. Finally, counsel for Dr. Binotti have extensive experience in antitrust and class action litigation, and their informed opinion is entitled to weight.

The Court assesses the adequacy of the Settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, and (5) the degree of opposition to the proposed settlement." *Beaulieu*, 2009 WL 2208131, at *26 (citing *Jiffy*

9

*Lube*, 927 F.2d at 158; *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 828-29 (E.D.N.C. 1994)).

As to the first and second factors, Dr. Binotti has adequately explained both the strengths and risks associated with continued litigation of her claims and trial. In particular, though Dr. Binotti had evidence of liability, Duke was prepared to introduce contrary evidence that the alleged no-poach agreement either did not exist or was not in force during the Class Period. Settlement is also favorable at this stage given the Court's decision that the claims for damages before 2016 are barred by the statute of limitations, Doc. 33 at 2, 4-5, and for damages after 2016, the Class would face the challenge of persuading a jury that Duke and UNC continued their alleged no-poach agreement even after Dr. Seaman filed her complaint on June 9, 2015. Dr. Binotti could have sought reconsideration of the decision or an appeal, but there is no guarantee Dr. Binotti would have prevailed. Considering these risks, the $19 million monetary recovery reflects a strong result for the Class. The proposed allocation plan is fair and reasonable as it will compensate class members on a pro rata basis according to the degree of alleged harm they suffered.

As to the third factor, the parties were fully informed about the strengths and weaknesses of the evidence. Continued litigation would involve considerable time and expense for the parties and the Court and risked the chance of no recovery for the Class. The Settlement guarantees Class Members significant monetary and injunctive relief.

The fourth factor is irrelevant because there is no indication that Duke would be unable to satisfy a judgment.

The fifth factor, the degree of opposition to the Settlement, can be evaluated because the Class has had an opportunity to comment in response to the notice program. Only one Class Member objected to the Settlement and the proposed request for attorney's fees and reimbursement of costs, and he did not object to the proposed allocation plan or the proposed service award for Dr. Binotti. Doc. 65 at ¶ 10; Doc. 70-4 ¶ 2; id. at p 4-5. Furthermore, only eight Class Members exercised their right to opt out of the Class. Doc. 68 at ¶ 4. In other words, over 99% of Class Members have chosen to release their claims against Duke in exchange for relief under the Settlement. The small number of exclusion requests is a strong indication of widespread support for the Settlement and that the Settlement is fair, reasonable, and adequate. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009) ("[A]n absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy."); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court . . . ."). The only objection filed did not turn on the adequacy of the settlement amount. *See* Doc. 70-4 at p 4-5.

In addition, Duke University provided the required notice of the proposed settlement under the provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, to the Attorney General of the United States, the Antitrust Division of the Department of Justice, and the various attorneys-general for all states and territories. *See* Docs. 71 ¶¶ 4, 7; 71-1. This included the Attorney General of North Carolina. Doc. 71-1 at 6 (column 2). The notices attached the materials required by CAFA, including the proposed

11

Case 1:20-cv-00470-CCE-JLW   Document 72   Filed 08/30/21   Page 11 of 14

settlement agreement and plan of allocation. Doc. 71 at ¶ 5; *see* Doc. 71-1. No governmental officer made any objection to the settlement, which also tends to indicate the settlement is appropriate.

The Court therefore concludes that the Settlement and proposed Plan of Allocation are fair, reasonable, and adequate and satisfy the criteria for final approval under Federal Rule of Civil Procedure 23.

## **Notice to Class Members**

The Class notice was delivered by mail and e-mail to all Class Members. *See* Docs. 65 at ¶ 3, 65-1, 65-2. The mail and e-mail notices clearly explained Class Members' rights, including the nature of the action, the Class definition, the legal issues, Class Members' rights to make an appearance with an attorney, Class Members' right to request exclusion, Class Members' right to object to the Settlement, and the binding effect of a Class judgment. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). The Notice apprised Class Members of Class Counsel's intent to seek 25% of the common fund as attorney's fees, to request reimbursement of costs, and to request a service award for Dr. Binotti.

Notice was also given through a case-specific website that published all relevant litigation documents and settlement notices, and which received over 4,652 unique visits. *See* Doc. 65 at ¶ 4. Additionally, the Settlement Administrator established a toll-free telephone number and handled calls from over 197 Class Members concerning the Settlement. *Id*. at ¶ 8.

The Court finds that the notice program effectively apprised Class Members of their rights, was the best practicable under the circumstances, and complied with all due

12

process requirements. *See* Fed. R. Civ. P. 23(e)(1)(B) (notice must be given to class "in a reasonable manner"); *Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 472 (W.D. Va. 2011) ("In the context of a class action, the due process requirements of the Fifth Amendment require reasonable notice combined with an opportunity to be heard and withdraw from the class.") (cleaned up).

The Notice given by Duke University complied with the requirements of the Class Action Fairness Act. *See* Docs. 71; 71-1.

### Designation of *Cy Pres* Recipient

"[A] *cy pres* distribution is designed to be a way for a court to put any unclaimed settlement funds to their 'next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'" *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007). *Cy pres* recipients must promote the objectives of the underlying statutes at issue and benefit the interests of the class members. *See Nachshin v. AOL*, 663 F.3d 1034, 1040 (9th Cir. 2011) (noting that *cy pres* distribution should be guided by the objectives of the underlying statutes, target the plaintiff class, and provide reasonable certainty that class members will benefit); *accord*, *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2020 WL 6292991, at *7 (M.D.N.C. Oct. 27, 2020). Generally, courts approve *cy pres* distributions "only when more redistribution is no longer feasible." *Newberg* § 12:32.

Pursuant to the parties' Settlement, a *cy pres* distribution is only contemplated if further redistribution of unclaimed funds to Class Members would not be economically

13

feasible. *See* Settlement, Doc. 41-1, ¶ IV(A)(8). Dr. Binotti proposes that the Court designate the American Antitrust Institute (AAI) as the *cy pres* recipient. The AAI is an independent, nonprofit organization devoted to promoting competition that protects consumers, businesses, and society. Its mission includes "research, education, and advocacy on the benefits of competition and the use of antitrust enforcement as a vital component of national and international competition policy." *See*, *Mission and History*, AM. ANTITRUST INST., https://www.antitrustinstitute.org/about-us/ (last visited August 10, 2021). Further, the AAI has a track record of advocating specifically against no-poach agreements on behalf of workers. *See*, *e.g.*, Randy Stutz, *AAI Issues New White Paper on the Antitrust Treatment of Labor-Market Restraints*, AM. ANTITRUST INST. (July 31, 2018), https://www.antitrustinstitute.org/work-product/2246/.

Having reviewed the organization's purpose and considered its nexus to this case and to the advancement of Class Members' interests, the Court concludes that the AAI is an appropriate *cy pres* recipient. Should unclaimed funds remain for which further redistribution would be economically unfeasible, the Settlement Administrator is authorized to disburse those funds to the AAI, consistent with the terms of the Settlement Agreement.

For these reasons and based on the record before it, the Court **GRANTS** Plaintiff's motion for final approval of the Settlement.

**IT IS SO ORDERED,** this the 30th day of August, 2021.

_____
UNITED STATES DISTRICT JUDGE